# United States Court of Appeals
## For the First Circuit

No. 13-1053

NATIONAL ASSOCIATION OF TOBACCO OUTLETS, INC.; CIGAR ASSOCIATION
OF AMERICA, INC.; LORILLARD TOBACCO COMPANY; R.J. REYNOLDS
TOBACCO COMPANY; AMERICAN SNUFF COMPANY; PHILIP MORRIS USA INC.;
U.S. SMOKELESS TOBACCO MANUFACTURING COMPANY LLC; U.S. SMOKELESS
TOBACCO BRANDS INC.; and JOHN MIDDLETON COMPANY,

Plaintiffs-Appellants,

v.

CITY OF PROVIDENCE, RHODE ISLAND; PROVIDENCE BOARD OF LICENSES;
PROVIDENCE POLICE DEPARTMENT; MICHAEL A. SOLOMON, Providence City
Council President, in his official capacity; STEVEN M. PARÉ,
Commissioner of Public Safety for the City of Providence, in his
official capacity; and ANGEL TAVERAS, Mayor of Providence, in his
official capacity,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Torruella, Dyk* and Thompson,
Circuit Judges.

Michael J. Edney, with whom Miguel A. Estrada, Gibson Dunn &
Crutcher LLP, Noel J. Francisco, Jones Day, Joel Kurtzberg, Floyd
Abrams, Cahill Gordon & Reindel LLP, Kenneth J. Parsigian, Latham
& Watkins LLP, James R. Oswald, Kyle Zambarano, Adler, Pollock &
Sheehan P.C., Gerald J. Petros, Adam M. Ramos, and Hinckley, Allen

---

*Of the Federal Circuit, sitting by designation.

& Snyder LLP, were on brief, for the appellants.

Anthony F. Cottone, with whom Jeffrey M. Padwa and Matthew T. Jerzyk were on brief, for appellees.

Donald A. Migliori, with whom Vincent I. Parrett and Motley Rice LLC were on brief, for amici curiae American Academy of Pediatrics-RI Chapters, et al.

Raymond A. Marcaccio, with whom Oliverio & Marcaccio, LLP, Seth Mermin, Thomas C. Bennigson, and Public Good Law Center were on brief, for amicus curiae Tobacco Control Legal Consortium.

Jacqueline G. Kelly, Administrator of Legal Services, Rhode Island Executive Office of Health and Human Services, with whom Thomas J. Corrigan, Jr., Senior Legal Counsel, Rhode Island Executive Office of Health and Human Services, was on brief, for amicus curiae Rhode Island Department of Health.

---

September 30, 2013

---

**DYK, Circuit Judge.** This case involves two ordinances enacted by the City of Providence, Rhode Island, (the "City") to reduce the incidence of tobacco use by young people. The ordinances (1) restrict the City's tobacco and cigarette retailers from reducing prices on tobacco products by means of coupons and certain multi-pack discounts (the "Price Ordinance"); and (2) restrict sales of certain flavored tobacco products other than cigarettes (the "Flavor Ordinance"). The National Association of Tobacco Outlets, et al. (collectively "National Association"), contends that the Price Ordinance violates the First Amendment and that both ordinances are preempted by federal and state law. The district court held that the ordinances were neither preempted nor otherwise invalid. We affirm.

## I.

On January 5, 2012, the City of Providence adopted two ordinances concerning the sale of tobacco products. The Price Ordinance prohibits licensed retailers from "accept[ing] or redeem[ing], [or] offer[ing] to accept or redeem . . . any coupon that provides any tobacco products without charge or for less than the listed or non-discounted price," and from "sell[ing] tobacco products to consumers through any multi-pack discounts (e.g., 'buy-two-get-one-free' [offers])." Providence, R.I., Code of Ordinances

§ 14-303.[1]  The Flavor Ordinance prohibits most retailers from selling flavored tobacco products (other than cigarettes), such as flavored "cigars, pipe tobacco, snuff, chewing tobacco, dipping tobacco," and other flavored tobacco products.  Id. § 14-309.  It provides that "[i]t shall be unlawful for any person to sell or

_____

[1]     The Price Ordinance provides, in relevant part:

No person who holds a license issued under this article, nor any employee or agent of same, shall:

(1) accept or redeem, offer to accept or redeem, or cause or hire any person to accept or redeem or offer to accept or redeem any coupon that provides any tobacco products without charge or for less than the listed or non-discounted price; or

(2) accept or redeem, offer to accept or redeem, or cause or hire any person to accept or redeem or offer to accept or redeem any coupon that provides any cigarettes without charge or for less than the listed or non-discounted price; or

(3) sell tobacco products to consumers through any multi-pack discounts (e.g., "buy-two-get-one-free") or otherwise provide or distribute to consumers any tobacco products without charge or for less than the listed or non-discounted price in exchange for the purchase of any other tobacco product; or

(4) sell cigarettes to consumers through any multi-pack discounts (e.g., "buy-two-get-one-free") or otherwise provide or distribute to consumers any cigarette without charge or for less than the listed or non-discounted price in exchange for the purchase of any other cigarette.

Id.  Though the language of the Price Ordinance does not expressly reference a ban on offers for multi-pack discounts, the parties are in agreement that the Price Ordinance bans both coupon and multi-pack price offers.  See Appellant's Br. 29; Appellee's Br. 34 (noting that "specific offers to redeem coupons or consummate multi-pack discount offers in the City" constitute "activity regulated by the Price Ordinance").

-4-

offer for sale any flavored tobacco product to a consumer, except in a smoking bar." Id.[2]

The history of the Providence City Council's (the "Council's") consideration of these ordinances demonstrates that they were designed to reduce youth tobacco use. The Councilperson who sponsored the ordinances urged that they would reduce the "unacceptably high rate of youth smoking in the City." J.A. 492. The Council President stated that the ordinances reflected a "pro-active approach to try to protect our youth from the dangers of nicotine." J.A. 525.

The council heard testimony that, despite prior efforts to curb teen smoking, 20% of high school students and 10% of middle school students in Providence had tried tobacco. During compliance checks conducted immediately before the ordinances were passed, roughly one in five Providence retailers sold cigarettes to minors (in violation of state and local laws), and 85% of Providence retailers were selling flavored tobacco products other than cigarettes. Over 90% of new smokers begin prior to the age of eighteen. The testimony and data submitted to the City Council showed that (1) youth are particularly sensitive to tobacco price

---

[2]    The Flavor Ordinance defines "flavored tobacco product," in relevant part, as "any tobacco product or any component part thereof that contains a constituent that imparts a characterizing flavor." Id. (emphasis added). The definition of "tobacco product" in the Flavor Ordinance expressly excludes cigarettes. See id.

increases; and (2) such youth are vulnerable to non-cigarette flavored tobacco products.[3] The Council concluded that the ordinances would be effective measures to combat youth tobacco use.

On February 13, 2012, shortly after the Council passed the ordinances, National Association filed suit in district court alleging that the ordinances violated both federal and state law. Its complaint alleged, inter alia, that both ordinances violated the First Amendment because they were impermissible regulations of commercial speech; that the Price Ordinance was preempted by the Federal Cigarette Advertising and Labeling Act (the "Labeling Act"), 15 U.S.C. § 1334(b); that the Flavor Ordinance was preempted by the Family Smoking Prevention and Tobacco Control Act ("FSPTCA"), 21 U.S.C. § 387p(a)(2)(A); and that, under state law,

---

[3]    See J.A. 518 (testimony of Matthew Stark indicating that youth are "more sensitive to price increases"); United States v. Philip Morris USA, Inc., 449 F. Supp. 2d 1, 639-40 (D.D.C. 2006) (collecting evidence of youth price sensitivity to discounting and concluding that tobacco manufacturers' "price-related marketing efforts, including coupons, multi-pack discounts, and other retail value added promotions, have partially offset the impact of higher list prices for cigarettes, historically and currently, particularly with regard to young people"), further proceedings at 477 F. Supp. 2d 191; id. at 640 (finding that, because tobacco manufacturers "fully recognize[]" the "impact of price on youth initiation," "there is no question that this enormously successful marketing technique had a significant effect on youth smoking incidence"); id. at 640-45 (collecting evidence that tobacco companies "long recognized young people's price sensitivity" but nonetheless "continue[d] to offer lower priced cigarettes which contribute[d] to an increase in youth smoking"); see also Ctrs. for Disease Control and Prevention, Preventing Tobacco Use Among Youth and Young Adults 10 (2012) ("Tobacco companies lower prices through coupons and other promotions so that consumers can afford to buy their products.  Teens are especially sensitive to pricing.").

the ordinances were also preempted and violated the licensing provisions of the Rhode Island Constitution. Both parties filed motions for summary judgment.

Along with its motion, the City submitted various affidavits, including a declaration from an economics expert concluding that "[e]xtensive economic research demonstrates that increases in cigarette and other tobacco product prices are highly effective in reducing cigarette smoking and the use of other tobacco products, particularly among young people," J.A. 530, and another from a public health expert concluding that "the prohibition on the redemption of coupons and multi-pack discounts as contained in the Providence [Price Ordinance] . . . would most likely have a real and measurable effect on smoking behavior," particularly in decreasing smoking among young people. J.A. 663. The city also submitted a 2012 report of the Surgeon General confirming that "extensive use of price-reducing promotions has led to higher rates of tobacco use among young people than would have occurred in the absence of these promotions."[4] As to the Flavor Ordinance, another declaration from a different public health expert concluded that the "[Flavor Ordinance] would substantially reduce the sale of flavored tobacco products to underage consumers and would reduce

_____

[4]    United States Department of Health and Human Services, Preventing Tobacco Use Among Youth and Young Adults: A Report of the Surgeon General 527-29 (2012), available at http://www.surgeongeneral.gov/library/reports/preventing-youth-tobacco-use/full-report.pdf.

the attractiveness of these products to underage consumers." J.A. 632.

On December 10, 2012, in a thorough and well-reasoned opinion, the district court denied National Association's motion and granted the City's motion, upholding the ordinances in all relevant respects.[5] See Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence, No. 12-96-ML, 2012 WL 6128707 (D.R.I. Dec. 10, 2012). National Association appealed.

## II.

## A.

We first consider National Association's challenge to the validity of the Price Ordinance under the First Amendment. National Association argues that the ordinance violates the First Amendment because it bans protected commercial speech (or, at minimum, expressive conduct) and does not survive scrutiny under either Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557 (1980), or United States v. O'Brien, 391 U.S. 367 (1968). The City argues that the Price Ordinance merely

---

[5] Because that portion of the Flavor Ordinance defining "characterizing flavor" excluded "tobacco, menthol, mint or wintergreen" flavors from the ban, see Providence, R.I., Code of Ordinances § 14-308, the district court struck language from the statute that included a ban on "concepts such as spicy, arctic, ice, cool, warm, hot, mellow, fresh, and breeze," id., reasoning that this language created confusion within the statute and needed to be struck "in order to keep the Section 14-309 ban against the sale of flavored tobacco products intact." Nat'l Ass'n, 2012 WL 6128707, at *8. The City has not appealed this ruling, and National Association on appeal has not raised a First Amendment challenge to the Flavor Ordinance.

-8-

regulates pricing and not speech and that such price regulation falls outside the ambit of the First Amendment.

The district court agreed with the City, concluding that National Association "fail[ed] . . . to establish that the practice of reducing the price of cigarettes and tobacco products through coupons and multi-pack discounts is subject to constitutional protection." Nat'l Ass'n, 2012 WL 6128707, at *5 (citing Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 49 (1st Cir. 2005)). It concluded that Central Hudson is inapplicable because "Section 13-303 is a means to control the price of cigarettes and tobacco products in Providence . . . without implicating 'commercial speech,'" and that O'Brien is inapplicable because the regulated conduct is not "inherently expressive." Id. We agree that the Price Ordinance does not violate the First Amendment.

Pricing information concerning lawful transactions has been held to be protected speech by the Supreme Court. See Va. State Pharmacy Bd. v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 761-64 (1976). But the ordinance here does not restrict the dissemination of pricing information generally. Nothing in the Price Ordinance restricts retailers or anyone else from communicating pricing information concerning the lawful sale price of cigarettes. Rather, the ordinance has more limited objectives. It (1) restricts the ability of retailers to engage in certain pricing practices, namely accepting or redeeming coupons for

tobacco purchases, and selling tobacco products by way of multi-pack discounting, and (2) bars retailers from offering to engage in these prohibited pricing practices.  See Providence, R.I., Code of Ordinances § 14-303.  Neither type of regulation is barred by the First Amendment.

In 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484 (1996), a majority of the Justices, in striking down the categorical ban on liquor price advertising there, made clear that price regulations and other forms of direct economic regulation do not implicate First Amendment concerns.  In determining the views of the court as a whole, we may aggregate the views expressed in the various separate opinions.  See, e.g, League of United Latin Am. Citizens v. Perry, 548 U.S. 399, 413-14, 431-35 (2006); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 17 (1983).  The principal opinion (representing the views of four Justices) explained that "alternative forms of regulation that would not involve any restriction on speech" could have advanced the state's purported interest in that case.  44 Liquormart, 517 U.S. at 507 (Stevens, J.).  It noted that "higher prices can be maintained . . . by direct regulation," and that "[p]er capita purchases could be limited."  Id.

Justice O'Connor, joined by three justices, in this respect agreed with the principal opinion, explaining that the state had "other methods at its disposal" to discourage liquor consumption

-10-

that included "establishing minimum prices." Id. at 530 (O'Connor, J., concurring in the judgment). Following the principal opinion, she explained that these alternative measures would have accomplished the state's goals "without intruding on sellers' ability to provide truthful, nonmisleading information to customers." Id. Justice Thomas, moreover, noted in his concurring opinion that regulations that would "directly ban[] a product (or . . . control[] its price . . .)" are the types of "regulation[s] involving no restriction on speech regarding lawful activity at all." Id. at 524 (Thomas, J., concurring in part and concurring in the judgment). These views, expressed by a majority of the Court, make clear that price regulations designed to discourage consumption do not violate the First Amendment.

Nonetheless, National Association argues that certain sales practices have an "inherently expressive" component that implicates the First Amendment, and that this triggers O'Brien scrutiny. National Association relies on Lorillard Tobacco Co. v. Reilly, 533 U.S. 525 (2001). There, the Supreme Court concluded that the O'Brien test might apply to Massachusetts' regulations of certain tobacco sales practices, but ultimately held that these practices withstood First Amendment Scrutiny. See id. at 567-70.[6] The

_____

[6] In separate portions of the opinion involving restrictions on the location of outdoor and point-of-sale advertising for smokeless tobacco and cigars, the Supreme Court held that those restrictions violated the First Amendment under a Central Hudson analysis. See Lorillard, 533 U.S. at 556-67.

-11-

regulations were directed toward cigarette, smokeless tobacco, and cigar retailers and "bar[red] the use of self-service displays and require[d] that tobacco products be placed out of the reach of all consumers in a location accessible only to salespersons." Id. at 567. The Supreme Court recognized that these provisions regulated conduct that "may have [had] a communicative component," id. at 569, because the regulated activity pertained to the display and dissemination of information to consumers. But Lorillard did not decide that the displays did in fact have a communicative component or reject the views expressed in 44 Liquormart. We therefore agree with the district court that the regulation of prices, without more, does not rise to the level of regulation of "inherently expressive" conduct subject to O'Brien scrutiny. See Nat'l Ass'n, 2012 WL 6128707, at *5.[7]

Finally, National Association argues that even if the restrictions on pricing do not violate the First Amendment, the

---

[7] National Association points to Discount Tobacco City & Lottery, Inc. v. United States, 674 F.3d 509 (6th Cir. 2012), which applied the Central Hudson framework to restrictions on the distribution of free samples of tobacco products and free gifts associated with continuity programs. The court held that "the Act's regulation of sampling and continuity programs [wa]s an attempt to regulate the 'communicative impact' of the activity, not the activity itself," and held these regulations invalid. Id. at 539. Similarly, National Association also relies on Bailey v. Morales, 190 F.3d 320 (5th Cir. 1999), which applied Central Hudson to invalidate a ban on chiropractor solicitations via "distributing promotional gifts and items," resting on the communicative impact of those solicitations. Id. at 321. We need not here consider the persuasive value of those cases for they did not involve price regulation, but rather the provision of free samples and promotional gifts.

-12-

ordinance's restriction on offers to accept these coupons or to engage in multi-pack discounting is barred by the First Amendment. We disagree. In Central Hudson, the Supreme Court made clear that "[t]he government may ban . . . commercial speech related to illegal activity." 447 U.S. at 563-64; see also Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations, 413 U.S. 376, 388 (1973). More recently, in United States v. Williams, the Supreme Court further established that "[o]ffers to engage in illegal transactions are categorically excluded from First Amendment protection." 553 U.S. 285, 297 (2008) (emphasis added). This is based on the "principle that offers to give or receive what it is unlawful to possess have no social value," and, accordingly, "[m]any long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech (commercial or not) that is intended to induce or commence illegal activities." Id. at 298.

Here, the "offers" and other forms of allegedly commercial speech restricted by the Price Ordinance are offers to engage in unlawful activity; that is, sales of tobacco products by way of coupons and multi-pack discounts, which are banned by the Price Ordinance itself. We agree with the district court that "the provision only precludes licensed tobacco retailers from offering what the Ordinance explicitly forbids them to do," and that offers to engage in banned activity may be "freely regulated by the

-13-

government." Nat'l Ass'n, 2012 WL 6128707, at *6-7. The Price Ordinance does not violate the First Amendment.

**B.**

National Association alternatively argues that both the Flavor Ordinance and the Price Ordinance are preempted by federal law. "[F]ederal preemption . . . is a question of statutory construction that we review de novo." DiFiore v. Am. Airlines, Inc., 646 F.3d 81, 85 (1st Cir. 2011). "[T]he purpose of Congress is the ultimate touchstone" in determining whether a particular state or local law is preempted. Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008) (internal quotation marks omitted). "When addressing questions of express or implied pre-emption, [the Court] begin[s] [its] analysis with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. at 77 (internal quotation marks omitted). These historic powers include the protection of the health and welfare of the state's citizens. Napier v. Atl. Coast Line R.R. Co., 272 U.S. 605, 610 (1926).

**1.**

We first consider the preemptive effect of the Labeling Act on the Price Ordinance. The purpose of the Labeling Act was to "establish a comprehensive Federal program to deal with cigarette labeling and advertising." 15 U.S.C. § 1331. The preemption provision of the Labeling Act provides that "[n]o requirement or

-14-

prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes[,] the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b).[8] It is undisputed that the Price Ordinance is a "requirement or prohibition based on smoking and health."

Even though the Price Ordinance itself refers to the regulation of coupons that are used for "promotional purposes," see Providence, R.I., Code of Ordinances § 14-300 (definition of "coupon"), the City argues that the Price Ordinance does not relate to the "advertising or promotion" of cigarettes under § 1334(b), because it relates to the regulation of conduct, rather than the communication of information relating to smoking and health. National Association argues that the Price Ordinance regulates promotional activity. Cases from other circuits interpreting § 1334(b) have held that "discounting" and "distribution of coupons" are "promotional" activities under the statute. 23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health, 685 F.3d 174, 182 (2d Cir. 2012); Jones v. Vilsack, 272 F.3d 1030, 1035-36 (8th Cir. 2001). We can assume, without deciding, that this is correct.

Building on the conclusion that such activities are "promotional," in 2001, Jones v. Vilsack determined that § 1334(b)

---

[8]   The parties dispute whether § 1334(b) would affect those portions of the Price Ordinance that regulate tobacco products other than cigarettes. Because we conclude that the Price Ordinance is not preempted, we need not reach this issue.

-15-

of the Labeling Act preempted an Iowa statute that banned retailers from, inter alia, "provid[ing] free articles, products, commodities, gifts, or concessions in any exchange for the purchase of . . . tobacco products." Iowa Code § 142A.6(6)(b); see Jones, 272 F.3d at 1039. National Association urges that under Jones v. Vilsack coupon and multi-pack discount regulation is preempted by the Labeling Act. But Jones v. Vilsack was decided under the pre-2009 statute.

In 2009, Congress enacted an exception to the § 1334(b) preemption provision that permits some restrictions on promotional activity. See Family Smoking Prevention and Tobacco Control Act, Pub. L. 111-31, § 203, 123 Stat. 1776, 1846 (2009) (codified at 15 U.S.C § 1334(c)). This exception states that:

> Notwithstanding [§ 1334(b)], a State or locality may enact statutes and promulgate regulations, based on smoking and health, that take effect after the effective date of the [FSPTCA], imposing specific bans or restrictions on the time, place, and manner, but not content, of the advertising or promotion of any cigarettes.

15 U.S.C. § 1334(c).

Notably, § 1334(c) was enacted in response to a portion of the Lorillard Supreme Court decision (separate from the First Amendment portion discussed above), which held that various Massachusetts regulations restricting outdoor and point-of sale cigarette advertising were preempted by the Labeling Act. See Lorillard, 533 U.S. at 551. This portion of Lorillard concluded that any tobacco

advertising regulation motivated by concerns relating to smoking and health was preempted by the Labeling Act, even though the regulations merely "govern[ed] the location [i.e., place], and not the content, of [the] advertising." Id. at 548-49. National Association admitted at oral argument, and commentators have agreed, that this provision was designed to "essentially reverse" the Lorillard preemption ruling.[9]

The 2009 amendment imposed two requirements for the exception: (1) the regulation must be content-neutral; and (2) it must be a regulation of the time, place, or manner of the advertising or promotion. National Association argues that the ordinance incorporates First Amendment standards for determining what is content-neutral and what is a time, place, and manner regulation. The preemption provision cannot be read in this limited fashion because under that interpretation the exception would have virtually no application. National Association, for example, argues that the Price Ordinance is not content-neutral because it singles out coupons and discounts that reference tobacco. But on its face, the preemption exception to the Labeling Act extends to regulations that single out tobacco. The exception refers specifically to "bans or restrictions on the . . . advertising or promotion of cigarettes." 15 U.S.C. § 1334(c). The § 1334(c)

---

[9]    See, e.g., Christopher N. Banthin & Richard A. Daynard, Room for Two in Tobacco Control: Limits on the Preemptive Scope of the Proposed Legislation Granting FDA Oversight of Tobacco, 11 J. Health Care L. & Pol'y 57, 69 (2008).

-17-

exception would make no sense if it were read not to exempt regulations from preemption simply because they were directed toward tobacco use. So too all regulations that fall under § 1334(b) necessarily pertain to "smoking and health," so Congress must have assumed that provisions validated by the § 1334(c) exception would pertain to "smoking and health," and in this respect did not need to be content-neutral.

National Association also argues that the ordinance is not content-neutral because it bars certain price advertising. Just as the content prohibition of § 1334(c) does not bar regulation of time, place, and manner because it is directed toward tobacco or concerned only smoking and health, we do not think it bars such regulation of pricing. We read the "content" restricting provision as concerned with "content" relating to health claims or requiring specific health information. This is consistent with the overall purpose of the Labeling Act's preemption provision, which is to ensure that federal regulation in this respect is "not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health." 15 U.S.C. § 1331.

In 23-34 94th Street Grocery (the only post-2009 court of appeals case addressing the Labeling Act's preemption provision), the Second Circuit agreed. It held that a regulation which required tobacco retailers to "prominently display tobacco health

-18-

warning and smoking cessation signage produced by the [New York City] Department [of Health]" was preempted. 685 F.3d at 179 (internal quotation marks omitted, second alteration in original). The court explained that "[t]he legislative scheme [of the Labeling Act] contemplates that Congress, and only Congress, will amend the content of warnings required of manufacturers to educate consumers, see S. Rep. No. 98-177, at 6-7; FSPTCA § 201(a), without interference of supplementary efforts by state or local authorities." Id. at 185. Such health warnings are the type of "content" for which Congress sought to preserve preemption under § 1334(c). Here, in contrast, the Price Ordinance merely regulates certain types of price discounting and offers to engage in such price discounting. It does not regulate "content" relating to health claims or warnings. The ordinance is content neutral.

The remaining question is whether the ordinance qualifies as a time, place, or manner regulation. On this issue, the district court held that

> Section 14-303 regulates the "time, place, and manner" of how cigarettes may be purchased in the City of Providence. As such, the Ordinance falls into the category of conduct specifically excluded from preemption by Subsection 1334(c) and provides no conflict with the intended purpose of the Labeling Act regarding uniform cigarette labeling and advertising.

Nat'l Ass'n, 2012 WL 6128707, at *11.

At the time of the 2009 enactment of § 1334(c), minimum price laws were common. See 59 Ctrs. for Disease Control & Prevention,

-19-

Morbidity & Mortality Weekly Report 389 (Apr. 9, 2010), <u>available</u> <u>at</u> http://www.cdc.gov/mmwr/pdf/wk/mm5913.pdf (noting that as of 2009 "25 states had minimum price laws for cigarettes" requiring certain markups to be added to the wholesale or retail prices of cigarettes). We are aware of no case after the 2009 amendments that has suggested that § 1334(b) of the Labeling Act was designed to preempt pricing regulations. Indeed, National Association conceded at oral argument that minimum price statutes would not now be preempted by the Labeling Act. We see no material difference between price regulations generally and the regulation of multi-pack discounts and coupons. Price regulations, including regulations of price offers, are regulations concerning the "manner" of promotion, and are not preempted.

**2.**

We next consider preemption of the Flavor Ordinance. National Association argues that the FSPTCA preempts the Flavor Ordinance, even though the relevant portion of the FSPTCA only regulates cigarette products, and the Flavor Ordinance only regulates non-cigarette tobacco products. National Association relies on 21 U.S.C. § 387p(a)(2)(A), which reads

> No State or political subdivision may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to <u>tobacco product</u> <u>standards</u>, premarket review, adulteration, misbranding, labeling, registration, <u>good manufacturing standards</u>, or modified risk tobacco products.

Id. (emphasis added). However, this provision was meant to prohibit state regulation narrowly and only with respect to the "specified and limited areas" listed in the statute. See H. Rep. 111-58, 2009 USSCAN 468, 493 (2009). National Association contends that the Flavor Ordinance, by effectively banning flavored smokeless tobacco, imposes an additional "tobacco product standard" or "good manufacturing standard" in violation of this provision.

For this argument, National Association primarily relies on a recent Supreme Court case involving a preemption provision banning state requirements "'with respect to . . . [the] operations'" of slaughterhouses. Nat'l Meat Ass'n v. Harris, ___ U.S. ___, ___, 132 S.Ct. 965, 969 (2012) (quoting 21 U.S.C. § 678). There, the Supreme Court held that a state regulatory ban on the sale of meat products from nonambulatory animals effectively regulated the "operations" of slaughterhouses and was therefore preempted. Id. at 972-73. Similarly, National Association argues that the Flavor Ordinance's sales restrictions effectively and impermissibly impose a new product or manufacturing standard in violation of the preemption provision. We disagree.

To understand National Association's argument, it is necessary to set forth the relevant statutory provisions. Section 387p(a)(1), the FSPTCA's preservation clause, permits regulations "relating to or prohibiting the sale . . . of tobacco products," but this provision is subject to subparagraph (A) of the preemption

-21-

provision, which bars "any requirement relating to tobacco product standards" or "good manufacturing standards," as noted above. 21 U.S.C. § 387p(a)(2)(A). Subparagraph (B) of the preemption provision, the savings clause, overrides the standards preemption but allows only regulations "relating to" the sale of tobacco products. Id. § 387p(2)(B). National Association argues that the savings clause must be read as not allowing regulation "prohibiting" sale and that the Flavor Ordinance is not a provision "relating to" sales but rather is a "prohibition" on sales. Again we disagree.

The Flavor Ordinance makes it "unlawful for any person to sell or offer for sale any flavored tobacco product to a consumer, except in a smoking bar." Providence, R.I., Code of Ordinances § 14-309 (emphasis added). It is not a blanket prohibition because it allows the sale of flavored tobacco products in smoking bars. Rather, it is a regulation "relating to" sales specifically allowed by the savings clause, which overrides the standards provision. See Nat'l Ass'n, 2012 WL 6128707, at *13.

This difference easily distinguishes National Meat. In National Meat, the state preemption statute—in contrast to the statute in this case—did not contain a savings clause that expressly exempted regulations "relating to the sale" of the product from preemption. See 21 U.S.C. § 678.[10] Significantly, in

_____

[10] National Association also relies on Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist., 541 U.S. 246 (2004). The case

-22-

<u>U.S. Smokeless Tobacco Manufacturing Co.</u> v. <u>City of New York</u>, 708

F.3d 428 (2d Cir. 2013), the Second Circuit held that a virtually

identical New York City provision was not preempted by the FSPTCA.

The provision at issue there, like the one at issue here,

"prohibit[ed] the sale . . . of 'any flavored tobacco product

except in a tobacco bar.'"  <u>Id.</u> at 431 (quoting New York City

Administrative Code § 17-715).[11]

_____

involved a preemption provision in the Clean Air Act ("CAA") that
prohibited "state or local 'standard[s] relating to the control of
emissions from new motor vehicles or new motor vehicle engines.'"
<u>Id.</u> at 251 (quoting 42 U.S.C. § 7543(a)).  In <u>Engine Manufacturers</u>,
a Los Angeles air quality management district adopted "Fleet Rules"
which regulated the types of vehicles (and engine types) that fleet
operators must purchase or lease when adding or replacing public
vehicles.  <u>Id.</u> at 249-50 & n.1-3.  Though the provision did not
expressly adopt emissions standards and was a regulation with
respect to the sale and purchase of vehicles, the Court held that
the provision was preempted because, in its view, "a standard is a
standard even when not enforced through manufacturer-directed
regulation."  <u>Id.</u> at 254.  However, the statutory scheme at issue
there, like that in <u>National Meat</u>, did not contain a preservation
clause that directly exempted sales regulations from preemption.
And indeed, the Court made clear in <u>Engine Manufacturers</u> that
"[n]either the manufacturer-specific interpretation of 'standard'
nor the resulting distinction between purchase and sale
restrictions finds support in the text of [the preemption
provision] or the structure of the CAA."  <u>Id.</u> at 252.  Here, in
contrast, the distinction between sales and manufacturing
regulations is clearly supported by 21 U.S.C. § 387p(a)(1).

[11]    While we agree with the ultimate decision reached in <u>U.S.
Smokeless</u>, we disagree with its reasoning to the extent it suggests
that, under some circumstances, a sales regulation may be an
effective regulation on manufacturing.  See <u>U.S. Smokeless</u>, 708
F.3d at 434 ("Certainly, any purported sales ban that in fact
functions as a command to tobacco manufacturers to structure their
operations in accordance with locally prescribed standards would
not escape preemption simply because the City framed it as a ban on
the sale of tobacco produced in whatever way it disapproved."
(internal quotation marks and citations omitted)). Given Congress'
decision to exempt sales regulations from preemption, whether those

-23-

The final issues concern National Association's argument that the Price Ordinance is preempted by state law, and its argument that both the Price Ordinance and Flavor Ordinance violate the Rhode Island Constitution in regulating tobacco licensing.

National Association argues that, while there is no express preemption, the Price Ordinance is impliedly preempted by state law because, in its view, Rhode Island law comprehensively regulates the offering and redemption of coupons and other discounts for tobacco products.  It is true that, under Rhode Island law, the Price Ordinance would be preempted by state law "if the Legislature intended that its statutory scheme completely occupy the field of regulation on a particular subject." Town of Warren v. Thornton-Whitehouse, 740 A.2d 1255, 1261 (R.I. 1999).  It is also true that field preemption "may be implied in the legislative scheme." See State ex rel. City of Providence v. Auger, 44 A.3d 1218, 1230 n.9 (R.I. 2012).  However, there must be a "clear indication . . . that the General Assembly intended to occupy the field." El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1232 (R.I. 2000).

Here, it is apparent that the General Assembly has not occupied the field of tobacco regulation as it relates to pricing generally or coupons and multi-pack discounts in particular. National Association cites statutes that prohibit the sale of

regulations have an impact on manufacturing is irrelevant.

tobacco products to minors, the distribution of free tobacco products to minors, and unfair sales practices laws that bar misleading price advertising. See R.I. Gen. Laws §§ 11-9-13.8, 11-9-13.10, 6-13-11. We note also that the state sets minimum prices for the sale of tobacco products. See R.I. Gen. Laws § 6-13-2(2). But National Association cannot point to any text of these statutes that suggests an intent to occupy the field of tobacco price regulation. Indeed, the Rhode Island Supreme Court has clearly established that, in contrast to other regulatory contexts, "the General Assembly [has] at no time disclosed, by implication or otherwise, its intent to occupy exclusively the field of regulating smoking." Amico's Inc. v. Mattos, 789 A.2d 899, 908 (R.I. 2002). We thus agree with the district court that the statutes do not impliedly preempt the ordinances. Further, although National Association also argues that the General Assembly declined to enact statutes akin to the Price Ordinance, we do not see why such inaction would evince an intent to occupy the relevant field. We thus agree with the district court's conclusion that this inaction "is simply insufficient to support an inference that the Legislature intended to preempt completely the regulation of tobacco product sales." Id.

Alternatively, National Association argues that both the Price Ordinance and the Flavor Ordinance violate the Rhode Island Constitution because "municipalities lack authority to regulate

-25-

businesses through licensing schemes." Appellants' Br. 51. The Rhode Island Constitution "grant[s] and confirm[s] to the people of every city and town in [Rhode Island] the right of self government in all local matters." R.I. Const. Art. XIII, § 1. But Rhode Island Supreme Court decisions suggest that the Rhode Island Constitution grants exclusive "power [to] the legislature to regulate and control by licensing the conduct of business within the state," and that local licensing measures are therefore prohibited absent delegation from the state. Nugent v. City of East Providence, 238 A.2d 758, 762-63 (R.I. 1968); Amico's Inc., 789 A.2d at 904.

Section 14-301 of the Providence Code of Ordinances requires all tobacco dealers in Providence to obtain a license from the Providence Board of Licenses ("Licensing Board"). National Association admits that it has not challenged this provision, either here or before the district court. As the district court concluded, therefore, "the question of whether the licensing requirement set forth in Section 14-301 of the Tobacco Dealers Ordinance is an unauthorized overreaching by the City is not before the Court." Nationa'l Ass'n, at *15.

Because the licensing provision is unchallenged, there is no basis for invalidating the Price Ordinance or the Flavor Ordinance. These ordinances only implicate licensing in two pertinent respects. First, the ordinances are directed generally toward

-26-

license-holders and contemplate enforcement by the Licensing Board. The Price Ordinance is directed toward "a person who holds a license under this article," Providence, R.I., Code of Ordinances § 14-303. The enforcement provisions empower the Licensing Board to impose the fines for violations of the ordinances. See id. § 14-310. Given that National Association is not challenging the overall licensing scheme, we do not think that these provisions are an issue here.

Second, the ordinances permit license revocation for violations of the ordinances. Id. National Association argues that this feature is incompatible with the state legislature's exclusive authority over licensing. See Nugent, 238 A.2d 758; Amico's, 789 A.2d 899. However, the basic validity of the licensing scheme has been conceded, and none of the appellants purports to have lost its license as a result of the ordinances. As the district court noted, "licensing is implicated only if a violation occurs," and "[t]he Ordinances have not yet been enforced and no suspension or revocation of a license has yet occurred in connection with an alleged violation of either Ordinance." Nat'l Ass'n, at *15. Thus, the District Court was correct in declining to reach this question.

**III.**

Because the Price Ordinance is an appropriate regulation of pricing, it falls outside the ambit of the First Amendment and is

-27-

not the sort of regulation preempted by the Labeling Act. Moreover, because the Flavor Ordinance is an appropriate sales regulation that is expressly preserved by the FSPTCA, it also is not preempted.  Neither ordinance, moreover, conflicts with state law because Rhode Island has not occupied the field of tobacco regulation, and National Association has not raised a direct challenge to the relevant licensing provision that bears on the ordinances' enforcement.  Therefore, the judgment of the district court is affirmed.

## COSTS

Costs to the City of Providence.