[Cite as *State ex rel. Yost v. Cent. Tobacco & Stuff, Inc.*, 2025-Ohio-4613.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO EX REL. ATTORNEY GENERAL DAVE YOST, | Case No. 24 CAE 11 0103 |
| | Opinion And Judgment Entry |
| Plaintiff - Appellant | |
| | Appeal from the Delaware County Court of Common Pleas, Case No. 24 CVH 07 0664 |
| -vs- | |
| | Judgment:   Affirmed |
| CENTRAL TOBACCO AND STUFF INC. d/b/a CENTRAL TOBACCO, | Date of Judgment Entry:  October 1, 2025 |
| Defendant – Appellee | |

**BEFORE:** William B. Hoffman; Andrew J. King; Robert G. Montgomery, Judges

**APPEARANCES:** DREW SMITH, for Plaintiff-Appellant; MATTHEW T. ANDERSON and KIRSTEN M. COX, for Defendant-Appellee.

*Montgomery, J.*

## STATEMENT OF THE CASE

**{¶1}**    The State of Ohio, ex rel. Attorney General Dave Yost ("hereinafter State") filed a Complaint and Request for Declaratory Judgment, Injunctive Relief, Civil Penalties and other Appropriate Relief in the Delaware County Court of Common Pleas on July 9, 2024. The State claimed that Central Tobacco and Stuff Inc., d/b/a Central Tobacco (hereinafter "Central Tobacco") violated the Ohio Consumer Sales Practices Act (hereinafter "CSPA") by selling electronic cigarettes that have not been authorized for sale by the Federal Drug Administration (hereinafter "FDA").

**{¶2}** Central Tobacco filed a Motion to Dismiss Plaintiff's Complaint on September 5, 2024. Central Tobacco filed its motion pursuant to Civ.R. 12(B)(6).

**{¶3}** The State filed a Memorandum in Opposition to Defendant's Motion to Dismiss on October 3, 2024.

**{¶4}** The trial court filed a Judgment Entry Granting Defendant's Motion to Dismiss on October 29, 2024.

**{¶5}** The State has timely appealed the trial court's decision.

**{¶6}** The State asserts in its sole assignment of error that:

**{¶7}** "I. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO DISMISS FINDING THAT THE STATE OF OHIO IS PREEMPTED FROM ENFORCING THE CSPA."

## STANDARD OF REVIEW

**{¶8}** The trial court granted Central Tobacco's Civ.R. 12(B)(6) motion to dismiss the State's Complaint finding that, "the State of Ohio's claims are preempted . . . ." *Judgment Entry*, p. 8.

**{¶9}** Civ.R. 12(B)(6) states, "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted; . . . ."

**{¶10}** When a trial court considers a motion to dismiss for failure to state a claim upon which relief can be granted, it must determine whether it appears beyond doubt from the allegations in the pleading that the plaintiff can prove no set of facts entitling him

to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975).

{¶11} "An appellate court reviews de novo the trial court's decision to grant or deny a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Doe v. Bath Local School Dist.*, 2014-Ohio-4992, ¶ 4 (3d Dist.), citing *Perrysburg Twp. v. Rossford,* 2004-Ohio-4362, ¶ 5. To sustain a trial court's dismissal under Civ.R. 12(B)(6), "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Miller v. Van Wert Cty. Bd. of Mental Retardation & Dev. Disabilities, 2009-Ohio-5082, ¶ 7 (3d Dist.),* citing *LeRoy v. Allen, Yurasek & Merklin*, 2007-Ohio-3608, ¶ 14.

### STATEMENT OF LAW

{¶12} Chapter Nine of the Federal Food, Drug and Cosmetic Act (hereinafter "FDCA") regulates the manufacturing, labeling, marketing and sale of tobacco products.

{¶13} The FDCA states that tobacco products shall be regulated by the federal government. "Tobacco products . . . shall be regulated by the Secretary under this subchapter . . . ." 21 U.S.C. 387a(a).

{¶14} The FDCA requires products introduced into the U.S. market after February 15, 2007, be authorized by the FDA as defined in 21 U.S.C. 387j.

{¶15} The FDCA requires the packaging of all tobacco products bear the statement, "sale only allowed in the United States." 21 U.S.C. 387t(a)(1).

{¶16} The FDCA's preservation clause, 21 U.S.C. 387p(a)(1), permits states to adopt more stringent or additional laws or rules relating to the sale of tobacco products than those imposed by the FDCA.

{¶17} However, the FDCA's preemption clause expressly prohibits a state from establishing a labeling requirement that is in addition to or different from the regulation set forth in the FDCA.

{¶18} "No State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products." 21 U.S.C. 387p(a)(2)(A).

{¶19} Some state laws are exempt from the FDCA's preemption clause by the FDCA's savings clause. The FDCA's savings clause, 21 U.S.C. 387p(2)(B) states the preemption clause does not apply "to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age, or relating to fire safety standards for tobacco products."

{¶20} The CSPA, which is codified in R.C. 1345, prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions. *Nicholson v. Davis Auto Performance*, 2024-Ohio-205, ¶ 19 (5th Dist.).

{¶21} R.C. 1345.02(A) states, "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

{¶22} R.C. 1345.03(A) states, "No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

{¶23} R.C. 1345.12(A) states that sections 1345.01 to 1345.13 of the Revised Code do not apply to, "An act or practice required or specifically permitted by or under federal law, . . . ."

{¶24} The federal government may preempt state laws under the Supremacy Clause of the United States Constitution.

{¶25} The Supremacy Clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2.

{¶26} When state law conflicts with federal law, the federal law preempts the state law and negates its effect. "Under the Supremacy Clause, from which our pre-emption doctrine is derived, 'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.' " *Gade v. Nat'l. Solid Wastes Mgmt. Ass'n.*, 505 U.S. 88, 108 (1992) citing *Felder v. Casey*, 487 U.S. 131, 138 (1988) quoting *Free v. Bland*, 369 U.S. 663, 666 (1962).

{¶27} Federal preemption can be "either express or implied." *Gade*, at 98.

{¶28} Express preemption occurs when a federal statute directly conflicts with state law. *Id.*

**{¶29}** Implied preemption occurs when "federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it,' " *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504 (1992) (quoting *Fidelity Fed. Sav. & Loan Ass'n. v. de la Cuesta*, 458 U.S. 141, 153 (1982)), "where 'compliance with both federal and state regulations is a physical impossibility,' " *Gade,* at 98 (quoting *Fl. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963)), "or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.*

## STATEMENT OF FACTS and ANALYSIS

**{¶30}** Central Tobacco is a retail store located in Delaware, Ohio, that sells electronic cigarettes (hereinafter "e-cigarettes").[1]

**{¶31}** It is not disputed that some of the e-cigarettes Central Tobacco sells have not obtained marketing authorization by the FDCA.

**{¶32}** The Complaint filed by the State on July 9, 2024, states:

Count One of the State's Complaint alleges that Central Tobacco has violated R.C. 1345.02(A) by offering for sale and selling illegal e-cigarettes. *Complaint*, p. 7.

Count Two of the State's Complaint alleges that Central Tobacco has committed unconscionable acts or practices in violation R.C. 1345.03(A) and R.C. 1345.03(B)(1). *Id.*, p. 8.

---

[1] Electronic cigarettes ("e-cigarettes") are also referred to as "vapes."

Count Three of the State's Complaint alleges that Central Tobacco has violated R.C.1345.02(A)(2) and the Exclusions and Limitations in Advertisements Rule, Ohio Admin. Code 109:4-3-02(A)(1). *Id.*

Count Four of the State's Complaint alleges that Central Tobacco has committed unfair or deceptive acts or practices in violation of R.C. 1345.02(A) and the Substantiation of Claims in Advertising Rule, Ohio Admin. Code 109:4-3-10(A). *Id.*, p. 9.

**{¶33}** The State summarized its argument in its brief: "Specific statutory violations included: (a) Appellee failing to clearly and conspicuously disclose that the illegal vaping products it sells were not legal; (b) representing that the vaping products it was selling had sponsorship and approval they did not have; (c) failing to clearly and conspicuously disclose certain material exclusions related to vapes it offers for sale and sells; and (d) making representations which would cause a reasonable consumer to believe such statements were true, without having in its possession, or relying upon, a reasonable basis in fact such as factual, objective, quantifiable, clinical, or scientific data or other competent and reliable evidence which substantiates such legality representations." *Brief of Appellant*, p. 1.

**{¶34}** The State asserts that it is attempting to enforce the CSPA, not the FDCA. "The State of Ohio seeks enforcement of Ohio's Consumer Sales Practices Act ("CSPA") to address the deceptive sale of illegal vaping products." *Reply Brief of Plaintiff-Appellant*, p. 4.

**{¶35}** The State does not argue that the e-cigarettes sold by Central Tobacco are "illegal" because they violate an Ohio law.

**{¶36}** The State alleges that the selling of e-cigarettes that lack the FDA authorization as required by 21 U.S.C. 387j is illegal and Central Tobacco has acted deceptively by failing to inform consumers that the e-cigarettes lack FDA authorization. The state argues this "deceptive act" by Central Tobacco is a violation of R.C. 1345.02(A).

**{¶37}** The Supreme Court of the United States held in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), that only the federal government can enforce the FDCA. *Buckman* explains in a footnote that:

> The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions: '[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.'

*Id.*, at 349, fn. 4.

**{¶38}** The *Buckman* court cited 21 U.S.C. 337 as authority for its ruling. 21 U.S.C. 337(a) states, "Except as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. 337(b)(1) reads, "A State may bring in its own name and within its jurisdiction proceedings for the civil enforcement, or to restrain violations, of section . . . if the food that is the subject of the proceedings is located in the State."

**{¶39}** As stated above, 21 U.S.C. 337 permits states to enforce certain provisions of the FDCA relating to food, however the sections governing tobacco products are not included in 21 U.S.C. 337(b)(1).

**{¶40}** The Sixth Circuit of the U.S. Court of Appeals addressed the issue of how to determine if a claim asserted under state law is in substance a claim seeking to enforce the FDCA. *Loreto v. Procter & Gamble Co.*, 515 Fed. Appx. 576, 579 (6th Cir. 2013). Citing *Buckman*, at 353, the *Loreto* court stated, "If the claim would not exist in the absence of the FDCA, it is impliedly preempted."

**{¶41}** The State's claim that the e-cigarettes are not in compliance with the FDCA is a claim that would not exist in the absence of the FDCA. Therefore, the State is impliedly preempted from bringing this action.

**{¶42}** The State further argues that, "Central Tobacco committed unconscionable acts or practices in violation of R.C. 1345.03(A) and (B)(1), by knowingly taking advantage of the inability of consumers to reasonably protect their interest as prospective consumers do not know that the products Defendant offered for sale and sold were not authorized or legal to be sold in the United States, including in Ohio, especially given that the products touted, 'sale only allowed in the United States.' " *Complaint*, p. 8.

**{¶43}** The State suggests that the language, "sale only allowed in the United States," on the labels of the "unauthorized" e-cigarettes sold by Central Tobacco leads a consumer to believe that the product is legal to be sold in the United States and this violates the CSPA. *Id.*

**{¶44}** The State clarifies its claim in its Memorandum in Opposition to Defendant's Motion to Dismiss. "The State does not seek to change the label, 'sale only allowed in the United States,' as posited by Defendant. Rather, the State of Ohio requests the Court order that Defendant not offer for sale illegal and unregulated vapes, deceiving consumers about their legality." *Id.*, p. 3.

**{¶45}** The FDCA requires all tobacco products to affix a label that states, "sale only allowed in the United States." 21 U.S.C. 387t(a)(1). The FDCA requires all tobacco products affix this label, not just those that have been authorized. The State's argument that the label is deceptive and thus violates the CSPA is impliedly preempted. As previously stated, "where the state law claim would not have existed but for the federal regulatory scheme created by the FDCA, the state-law claim is preempted." *Loreto,* at 579.

**{¶46}** The Supreme Court held in *Buckman,* that state-law tort claims are not preempted if the conduct would give rise to liability under state law even if the FDCA had never been enacted but that, where the FDCA is a "critical element" of the state-law claim, the claim is preempted. *Buckman*, at 353.

**{¶47}** The act that the State argues is unconscionable is required under federal law and therefore exempt from the protections set forth under the CSPA.

**{¶48}** The State argues that the holdings in *Buckman* and *Loreto* are distinguishable from the case at hand because those cases concerned private litigants and the plaintiff in this case is the state government. However, there is no authority to distinguish such cases based on public vs. private litigants or to limit their application as suggested by the State. The reasoning set forth in both *Buckman* and *Loreto* does not depend upon the nature of the litigant.

## CONCLUSION

**{¶49}** This Court has reviewed all pleadings, the trial court's Judgment Entry, relevant case law, relevant state and federal statutes and finds that the Complaint filed by the State has failed to state a claim upon which relief can be granted. The Judgment Entry Granting Defendant's September 5, 2024, Motion to Dismiss filed in the Delaware County Court of Common Pleas is affirmed.

**{¶50}** Costs to Appellant.

By: Montgomery, J. and

Hoffman, P.J., concur.

King, J., dissents.


*King, J. dissents,*

**{¶ 51}** Although I respectfully dissent from my colleagues, it has more to do with the opaque state of the preemption doctrine rather than any flaw I see in Judge Montgomery's analysis. In many respects, the tools we are given for interpretation and construction conflict with one another. Nonetheless, we are obligated by our oaths to apply this messy doctrine in the best way possible. And when doing so, I conclude the Attorney General's lawsuit, premised upon state law, is not preempted.

**{¶ 52}** The doctrine of preemption is rooted in the Supremacy Clause, U.S. Const., art. VI, cl. 2, which declares that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." *See also McCulloch* v. *Maryland,* 17 U.S. 316 (1819).

{¶ 53} For better or worse, the modern preemption doctrine recognizes broad authority of the federal and state governments to concurrently regulate the same subject. *National Solid Wastes Management Association v. Killian*, 918 F.2d 671, 686 (7th Cir. 1990) (Easterbrook, J., dubitante) (collecting cases). Thus, the mere existence of legislation at both levels is alone insufficient to preempt state law. In fact, certain parties may be able to prosecute both federal and state causes in state court because of the broad jurisdiction of state courts to hear federal cases. *Gulf Offshore v. Mobil Oil Corp.,* 453 U.S. 473 (1981). Thus, we begin with the text of the competing statutes.

{¶ 54} As we do so, we must consider that there are two kinds of preemption, express and implied. *Gade v. National Solid Wastes Management Association*, 505 U.S. 88, 98 (1992). Turning first to state law, the Attorney General seeks to enforce R.C. 1345.02 and 1345.03, which prohibit "unfair or deceptive act or practice" and "unconscionable act or practice" in connection with a "consumer transaction." The essence of the Attorney General's suit here, is the manner in which Central Tobacco offered e-cigarettes for sale violated the act by, among other things, not clearly distinguishing between the legal and illegal products.

{¶ 55} The distinction between a legal e-cigarette and an illegal one turns on federal law, the Food, Drug, and Cosmetic Act, as amended by the Family Smoking Prevention and Tobacco Control Act of 2009, and regulatory action by the FDA under the Act. Central Tobacco argues that the regulatory authority given to the FDA thwarts the Attorney General's action related to the sale of those illegal e-cigarettes. Central Tobacco bases this argument on 21 U.S.C. 387p(a)(2)(A), which states:

No State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products.

{¶ 56} When evaluating a claim of explicit preemption by Congressional Act, our "task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 664 (1993). Besides examining the words that are used, the reviewing court should also consider "the structure and purpose of the statute." *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 138 (1990). But as we consider the text, along with an act's structure and purpose, we are to assume "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947). There appears to be no dispute that the Attorney General is pursuing traditional state police power by protecting the welfare of Ohio consumers; thus, we need a clear statement from Congress to preempt Ohio's statute.

{¶ 57} The parties' dispute before us revolves around whether the complained of conduct falls within the meaning of "labeling." The essence of the case brought by the Attorney General against Central Tobacco is that selling illegal e-cigarettes bearing the

label "sale only allowed in the United States," as if they are legal e-cigarettes, is false and deceptive. Not only does Central Tobacco not see the deceptive sales as a problem, but it sees the label as its ticket to preemption. It argues because both legal and illegal e-cigarettes are mandated by federal law to carry the label "sale only allowed in the United States," the Attorney General cannot sue under Ohio's Consumer Sales Practice Act for the sale of labeled-yet-illegal e-cigarettes. I find this to be a curious argument. To begin, I observe this appears to be a speculative argument. We are at the Civ.R. 12(B)(6) stage of this matter, and it is unclear whether the FDA truly requires unauthorized e-cigarettes to be labeled this way. But assuming it is true, I still conclude the argument fails.

{¶ 58} Central Tobacco appears to say because the FDA requires illegal e-cigarettes be labeled for sale in the United States, there can be no deceptive sales practice for holding out an illegal product as an apparently legal product and selling it to an Ohio consumer. This argument strains credulity. The Attorney General's claim is rooted in the misrepresentation about the legality of these products, and thus implicitly centered on health and safety concerns of an unregulated product being offered for sale in a deceptive manner to unaware consumers. Moreover, the preemption argument rests on an absurd premise that a supplier of illegal e-cigarettes can put a false label on them, enjoy federal preemption to avoid state law enforcement, and then rely on FDA nonenforcement to trick unsuspecting consumers into purchasing an adulterated product.

{¶ 59} In my view, this scheme is not within the text of 21 U.S.C. 387p(a)(2)(A); this means we are without a clear Congressional statement intending to insulate a criminal enterprise from the attorneys general of all 50 states. As discussed below, several federal appellate courts construed preemption to not occur when state law is truly

regulating sales, as opposed to labeling. *U.S. Smokeless Tobacco Manufacturing Co. LLC v. City of New York*, 708 F.3d 428, 436 (2d Cir. 2013). *See also National Association of Tobacco Outlets, Inc. v. City of Providence*, 731 F.3d 71 (1st Cir. 2013); *R.J. Reynolds v. Los Angeles City*, 29 F.4th 542 (9th Cir. 2022); and *R.J. Reynolds Tobacco Co. v. City of Edina*, 60 F.4th 1170, 1173 (8th Cir. 2023). Thus, I conclude that there is no express Congressional purpose to preempt the Attorney General from bringing an action claiming a deceptive sales practice involving a tobacco product.

{¶ 60} Despite Congress expressly preempting some state law, the Supreme Court has interpreted the Supremacy Clause to mean that a Congressional Act with an express preemption can still carry with it an implication of preemption beyond the plain language of the statute. *Sprietsma v. Mercury Marine, a Division of Brunswick Corp.*, 537 U.S. 51, 65 (2002). For purposes of reviewing FDCA's preservation and savings clauses next, the question of whether implied preemption applies here will be addressed last. This is because the structure of the regulatory scheme is relevant to the analysis of both issues. From a review of federal law, it appears that the presumption against preemption would generally apply; yet, we are to construe any savings clause to be consistent with Congress's "careful regulatory scheme." *Geier v. American Honda Motor Co.*, 529 U.S. 861, 870 (2000). It is an unusual way to begin an analysis of statutory text: instead of beginning with the ordinary meaning of its terms, but rather with a judicially manifested value judgment about what Congress meant to do as part of its legislation. *See Altria Group, Inc. v. Good*, 555 U.S. 70, 958 (2008) (Thomas, J., dissenting) (Justice Thomas questioned the failure to use ordinary principles of statutory interpretation in preemption cases).

{¶ 61} In any event, I conclude that Congress did not intend to preempt an action such as this, and I would broadly follow the Second Circuit's opinion in *U.S. Smokeless Tobacco*. In reviewing the same language that is before us, the Second Circuit found no preemption, concluding that ". . . given Congress's explicit decision to preserve for the states a robust role in regulating, and even banning, sales of tobacco products, we adopt a broad reading of the saving clause and a limited view of the kinds of restrictions that would constitute a ban and require us to address the permissibility of outright prohibitions under the saving clause." *U.S. Smokeless Tobacco,* 708 F.3d at 436. I turn next to the statutory text.

{¶ 62} FDCA includes a "preservation" provision that allows for broad state regulation (21 U.S.C. 387p(a)(1)):


Except as provided in paragraph (2)(A), nothing in this subchapter, or rules promulgated under this subchapter, shall be construed to limit the authority of a Federal agency (including the Armed Forces), a State or political subdivision of a State, or the government of an Indian tribe to enact, adopt, promulgate, and enforce any law, rule, regulation, or other measure with respect to tobacco products that is in addition to, or more stringent than, requirements established under this subchapter, including a law, rule, regulation, or other measure relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age . . . .

{¶ 63} As discussed above, subsection (a)(2)(A) operates as the general preemption section here. Recall that Congress expressly preempted state regulation of labels. But under both the preservation provision and the savings clause, a state is free to more stringently regulate the sale of an e-cigarette. The savings clause excepts from the preemption provision certain activities that might otherwise be preempted: the preemption provision "does not apply to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age."

{¶ 64} Thus, the question before us is whether the underlying action is better viewed as a state action attempting to regulate the sale of the product or its labeling. I view it as the former and thus find this action fits comfortably within the savings clause (and discussed below, the overall regulatory scheme).

{¶ 65} The Attorney General is seeking to prevent the sale of items that appear to be lawful e-cigarettes, but in fact are not. The Attorney General is not seeking to change the label, require additional labels, remove or obliterate the label Central Tobacco claims is required, or otherwise interfere with the labeling regime the FDA has instituted. Rather, the Attorney General's complaint is concerned with the sale of adulterated products that appear to be unadulterated products to unaware consumers. Any injunction granted would be to redress the sales practices rather than the labeling used.

{¶ 66} In the usual practice, we would read significance into Congress's use of different words in different places and attempt to give each term its proper meaning. *S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("It is a well-established canon of statutory interpretation that the use of different words or terms within a statute

demonstrates that Congress intended to convey a different meaning for those words"). Likewise, in a case where an interpretive rule includes presuming the outcome, e.g., no preemption here, it often resolves it by benefit of such a presumption. In the case before us, the two together would ordinarily resolve this in favor of the Attorney General. But the Supreme Court requires us to look at the regulatory scheme more broadly and consider it on more or less equal footing to our other tools of statutory interpretation and construction. *See Geier*, 529 U.S. 861, and *Altria Group,* 555 U.S. 70.

{¶ 67} The efforts of the FDA to regulate tobacco products and smokeless tobacco devices began in 1996. But the Supreme Court ultimately concluded that Congress gave no such authority to the FDA. *Food & Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000). Congress responded by passing the Family Smoking Prevention and Tobacco Control Act of 2009. *Food & Drug Administration v. Wages & White Lion Investments, L.L.C.*, 604 U.S. 542, 551 (2025). For our purposes, this act did three things: 1) it amended the FDCA to include the preemption and savings clauses at issue here, 2) it granted broad regulatory authority to the FDA over tobacco products entering commerce after 2007, and 3) it subjected these new products to a premarket authorization process. *Id*. Most of the Supreme Court's discussion in *Wages & White Lion Investments* in fact centered around the FDA's premarket authorization process, which we will return to in a moment.

{¶ 68} This Congressional act and all consequential federal regulatory action took place after the Tobacco Master Settlement Agreement. This agreement was the result of litigation brought by 46 states alleging that tobacco companies had engaged in a wide range of deceptive practices. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 503 (6th Cir.

2008). We know that Congress enacted this scheme against the background of little prior federal regulation and after the states recovered hundreds of billions of dollars from tobacco companies through litigation. If our preemption analysis must consider the broader context of the regulatory scheme, then these facts are impossible to ignore. It is apparent Congress intended to permit states to continue to regulate e-cigarettes, but also give the FDA an exclusive regulatory space it did not have before.

{¶ 69} Thus, consideration of the regulatory scheme bolsters the conclusion I would reach on the text alone—the Attorney General's action is not preempted. The statute twice excludes sales from the scope of preemption, which makes sense given the history leading up to the enactment of the Family Smoking Prevention and Tobacco Control Act of 2009. Moreover, the premarket authorization process helps define the scope of the preemption provision. Congress intended to exclude states from interfering with the FDA's review and approval process, and in turn, allow the manufacturers to be subject to but a single process and regulatory decision.

{¶ 70} Because the Attorney General's complaint is focused on sales, and Ohio could expressly make these products illegal, I would hold the action to be permissible under the FDCA. Certainly, if the Attorney General was truly attacking the labeling process, such as demanding a new or different label be affixed, then such a complaint might well be in conflict with the FDA. But this situation is closely comparable to the "tobacco flavoring" litigation that at least four federal appellate courts have held are not preempted by this Act.

{¶ 71} In my view, just as this analysis bears on the question of express preemption, I would likewise conclude it does not support a finding of implied preemption

under the conflict preemption doctrine. The Sixth Circuit recently has helpfully described both arms of this doctrine:

> There are two types of conflict preemption: impossibility and obstacle. The first occurs when it is impossible to comply with both federal and state regulations. The second occurs when the state law is "an obstacle to the accomplishment and execution of" the federal scheme. In other words, if the state law would cause the federal law's "operation [to] be frustrated and its provisions [to] be refused their natural effect," the state law "must yield to the regulation of Congress."

*Torres v. Precision Industries, Inc.,* 995 F.3d 485, 492 (6th Cir. 2021) (internal citations omitted).

{¶ 72} As discussed above, it is not impossible for a supplier for Central Tobacco to comply with both state and federal law. Ohio could prohibit the sale altogether, but here the Attorney General is attempting to stop deceptive sales. Irrespective of the requirement to include the label at issue here, at the Civ.R. 12(B)(6) stage, the Attorney General has pleaded that the manner in which the tobacco products were sold was deceptive, and Central Tobacco has no federal protection—historically or statutorily—from deceptively selling a tobacco product.

{¶ 73} Although not clearly stated as such, it appears that Central Tobacco is primarily making an obstacle preemption argument. It cites to an unreported Sixth Circuit case and argues that a state enforcing a federal decision under a state law vehicle

frustrates the federal regulatory scheme. *Loreto v. Proctor & Gamble Co.,* 515 Fed.Appx 576, 579. This argument goes too far.

{¶ 74} In evaluating a claim under this doctrine, the Sixth Circuit has described obstacle preemption as a high bar because the party must show the federal act "cannot be otherwise accomplished" and the state law must "directly interfere with the operation of a federal program." *Dayton Power & Light Co. v. FERC*, 126 F.4th 1107, 1127 (6th Cir. 2025). The Sixth Circuit went on to repeat the cautionary words of the Supreme Court regarding obstacle preemption: "[this doctrine] 'does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives,' which 'would undercut the principle that it is Congress rather than the courts that pre-empts state law.'" *Id*. at 1128, quoting *Chamber of Commerce of U.S. v. Whiting,* 563 U.S. 582, 607 (2011).

{¶ 75} Central Tobacco has not met this high bar, and I would decline the invitation to undertake a "freewheeling judicial inquiry." I would also distinguish *Loreto*. Foremost, the text of the Family Smoking Prevention and Tobacco Control Act of 2009 explicitly invites state regulation in a way not present in *Loreto*. But also, the essence of the claim here is quite different. In *Loreto*, the plaintiff brought suit over a labeling claim that fell within the exclusive regulatory authority of the FDA. Rather than rely on FDA enforcement, plaintiffs sought enforcement by a state provided for cause of action. It does not take much imagination to suppose how numerous plaintiffs in 50 states doing the same would present an obstacle to federal enforcement and uniform federal regulation. Thus, a court might well be more cautious and find implied preemption in that situation.

{¶ 76} And if that was the case here, I might be similarly concerned. But it is not. Here, the Attorney General is not attempting to enforce an FDA decision or take regulatory

action that is exclusive to the FDA, e.g., the premarket review process. The action is to halt deceptive sales practices. Since the statute expressly preserves state action, it would be discrepant to hold that the portion preserving and saving state actions regulating deceptive sales is somehow an obstacle to federal enforcement.

{¶ 77} In sum, I would find there is no express preemption. On the contrary, Congress explicitly preserved the type of action the Attorney General is bringing here. I would also hold there is no implied preemption of this action because the text, in consideration of the applicable presumptions, and the overall regulatory scheme, points strongly to these types of cases being permissible under the Family Smoking Prevention and Tobacco Control Act of 2009. Thus, I respectfully dissent.