[Cite as *State ex rel. Yost v. Orrville Tobacco & Vape Shop, L.L.C.*, 2026-Ohio-983.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE EX REL. ATTORNEY GENERAL
DAVE YOST

    Appellant

    v.

ORRVILLE TOBACCO AND VAPE
SHOP, LLC, et al.

    Appellee

C.A. No.    25AP0011

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2024CVC-11 000327

DECISION AND JOURNAL ENTRY

Dated: March 23, 2026

SUTTON, Judge.

{¶1}    Plaintiff-Appellant State of Ohio ex rel. Attorney General Dave Yost (the "State") appeals from the judgment of the Wayne County Court of Common Pleas granting the motion to dismiss filed by Defendant-Appellee Orrville Tobacco and Vape Shop, LLC ("Orrville Tobacco"). For the reasons that follow, we reverse.

I.

**Introduction**

{¶2}    The State of Ohio has enacted consumer protection laws to protect Ohio consumers from unfair and deceptive sales practices. Tobacco products, including electronic cigarettes, also known as "vapes," are heavily regulated by the federal government for the protection of public health. This case involves the interplay between federal and Ohio laws regulating the sale, labeling, and marketing of tobacco products in Ohio.

{¶3}    Orrville Tobacco is an Ohio retailer that sells tobacco products, including vapes. The State has alleged that Orrville Tobacco sells illegal vapes that carry the label, sale "only allowed in the United States," and that the illegal vapes are not authorized to be sold in the United States or in Ohio.  The State further claims that Orrville Tobacco is engaging in deceptive sales practices in violation of Ohio law by failing to clearly and conspicuously disclose that the products it offers for sale are not legal to be sold in the United States or in Ohio.  Orrville Tobacco argues that federal law requires all tobacco products, including products not authorized by the United States Food and Drug Administration ("FDA"), to be labeled "[s]ale only allowed in the United States."  Orrville Tobacco argues it is therefore protected from the State's enforcement of its consumer protection laws due to the "safe harbor" provision of Ohio's Consumer Sales Practices Act ("CSPA"), which exempts acts required by federal law, and further argues federal law preempts the CSPA's prohibition against deceptive sales practices when the product is a tobacco product that carries the label "sale only allowed in the United States."

{¶4}    Stated another way, Orrville Tobacco's argument is that state and federal laws enacted to protect consumers of tobacco products should be applied to protect a retailer's deceptive acts to sell illegal unauthorized tobacco products.

**Relevant Background Information**

{¶5}    In order to protect Ohio consumers, the State filed a complaint alleging that Orrville Tobacco is engaging in unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.01 et seq.  The complaint alleges in part, "Orrville Tobacco has committed unfair or deceptive acts or practices in violation of [the CSPA], R.C. 1345.02(A), by failing to clearly and conspicuously disclose that the products it offers for sale are not legal to be sold in the United States or in Ohio."

The relief sought by the State includes a declaration that Orrville Tobacco has violated the CSPA and an order permanently enjoining Orrville Tobacco from further violating the CSPA.

{¶6} Orrville Tobacco moved the trial court to dismiss the State's complaint pursuant to Civ.R. 12(B)(6), arguing federal law requires all vapes sold by Orrville Tobacco to be labeled "sale only allowed in United States," and because the State's claims are based on an act required by federal law, the State's complaint is barred by the "safe harbor" provision of Ohio's CSPA. In addition, Orrville Tobacco argued that the State's claims are preempted by federal law, specifically the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. 387t(a)(1), which it argues mandates the label "sale only allowed in the United States" on tobacco products, including the illegal and unauthorized vapes sold by Orrville Tobacco.

{¶7} The trial court granted Orrville Tobacco's motion to dismiss. It held that the CSPA's "safe harbor" provision in R.C. 1345.12(A) applies and "remove[s] the controversy concerning the labeling from the applicability of the []CSPA." The trial court further found that the State's CSPA claims are impliedly preempted by the FDCA.

{¶8} The State has appealed, raising three assignments of error for our review. To facilitate our analysis, we will consider the assignments of error out of order.

II.

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT ERRED IN HOLDING THE [STATE] IS PROHIBITED FROM BRINGING THIS ACTION BY THE SAFE HARBOR PROVISION OF THE CSPA[.]**

{¶9} The State argues in its second assignment of error that the trial court erred when it found the "safe harbor" provision of the CSPA protects Orrville Tobacco from the State's enforcement of the CSPA. The "safe harbor" provision of the CSPA provides that the CSPA does

not apply to "[a]n act or practice required or specifically permitted by or under federal law[.] R.C. 1345.12(A). Orrville Tobacco argues that federal law requires all tobacco products, including illegal unregulated vapes, to be labeled "sale only allowed in the United States." Therefore, Orrville Tobacco concludes, the CSPA does not apply to the State's claims because the claims are based on the label required by federal law.

{¶10} The FDCA, as amended by the Family Smoking Prevention and Tobacco Control Act ("the Act") in 2009, governs the manufacture, labeling, marketing, and sale of tobacco products. *See* 21 U.S.C. 387, *et seq.* The Act "'provides that all new tobacco products-those not commercially marketed in the United States prior to February 2007-must be approved by the FDA before being marketed to the public.'" *Vape Cent. Group, LLC v. U.S. Food and Drug Admin.*, U.S.D.C. Slip. Op. No. 24-3354, 2025 WL 637416, *1 (Feb. 27, 2025), quoting *Fontem US, LLC v. U.S. Food & Drug Admin.*, 82 F.4th 1207, 1212 (D.C. Cir. 2023), citing 21 U.S.C. 387j. This includes vapes. *Id.* New tobacco products that have not been FDA approved, including vapes, are deemed "adulterated" and it is not legal to market and sell these products in the United States. 21 U.S.C. 387b(6)(A). 21 U.S.C. 387t(a)(1) states, in part, "the label, packaging, and shipping containers of tobacco products other than cigarettes for introduction or delivery for introduction into interstate commerce in the United States shall bear the statement 'sale only allowed in the United States.'"

{¶11} The State of Ohio has enacted consumer protection laws to protect Ohio consumers from deceptive sales practices. The CSPA "was enacted in 1972 and prohibits suppliers from committing unfair, deceptive, or unconscionable acts or practices in connection with consumer transactions." *Krueck v. Youngstown State University*, 2019-Ohio-3219, ¶ 13 (9th Dist.), citing R.C. 1345.02 and R.C. 1345.03. The CSPA defines a "'[s]upplier' as "a seller . . . engaged in the

business of effecting or soliciting consumer transactions[.]" R.C. 1345.01(C). "Consumer transaction" is defined as "a sale . . . of any item of goods . . . to an individual for purposes that are primarily personal . . . , or solicitation to supply any of these things." R.C. 1345.01(A). There is no dispute that Orrville Tobacco is a supplier that sells tobacco products including vapes not authorized by the FDA.

{¶12} Here, the State is seeking to enforce the CSPA, alleging in its complaint that Orrville Tobacco has committed unfair or deceptive acts in violation of the CSPA by failing to clearly and conspicuously disclose that the products it offers for sale are not legal to be sold in the United States or in Ohio and the label "sale only allowed in the United States" on illegal vape products offered for sale by Orrville Tobacco takes advantage of the inability of Ohio consumers to reasonably protect their interests as the consumers do not know that the products are not authorized or legal to be sold in the United States. The State's complaint also includes a claim that Orrville Tobacco has violated portions of Ohio's Administrative Code, including section 109:4-3-02(A)(1) (Exclusions and Limitations in Advertisements Rule) by failing to clearly and conspicuously disclose that the vapes were not legal to be sold in the United States.

## Civ.R. 12(B)(6)

{¶13} A Civ.R. 12(B)(6) motion tests the sufficiency of the complaint, and dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." In construing a motion to dismiss, the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). Before the court may dismiss a complaint, it must appear beyond doubt that the plaintiff can prove no set of facts entitling the plaintiff to relief. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus.

{¶14}   This Court reviews an order granting a Civ.R. 12(B)(6) motion to dismiss de novo. *Perrysburg Twp. v. City of Rossford*, 2004-Ohio-4362, ¶ 5. "Using a de novo standard, this Court conducts an independent review of the trial court's decision, giving no deference to the trial court's determination." *Jacobson v. Akron Children's Hosp.*, 2023-Ohio-2225, ¶ 53 (9th Dist.).

**Ohio's Consumer Sales Practices Act Safe Harbor Provision**

{¶15}   The State brings its complaint against Orrville Tobacco pursuant to Ohio's CSPA, codified in R.C. Chapter 1345.  R.C. 1345.12(A) states that "Sections 1345.01 to 1345.13 of the Revised Code do not apply to . . . [a]n act or practice required or specifically permitted by or under federal law . . . ."  This provision, and similar provisions in other state consumer protection statutes, has been referred to as a "safe harbor" provision.  *See In re Santa Fe Natural Tobacco Co. Marketing Sales Practices Liab. Litigation*, 288 F.Supp.3d 1087, 1250 (D. New Mexico 2017).

{¶16}   Orrville Tobacco's argument is that Ohio law provides "safe harbor" because the products it sells, including the illegal adulterated vapes, carry the federally required label "sale only allowed in the United States."  We are mindful that this is the Civ.R. 12(B)(6) stage of the proceedings and dismissal is appropriate only where the State can prove no set of facts entitling it to relief. Further, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the State.

{¶17}   Here, the State's claims include the allegation that the illegal vapes offered for sale by Orrville Tobacco carry a label that reads, "sale only allowed in the United States."  We must presume that fact to be true.  The complaint also alleges Orrville Tobacco has failed to clearly and conspicuously disclose that the products it offers for sale are not legal to be sold in the United States or in Ohio.  We must also presume that fact to be true.  The State further alleges that the label "sale only allowed in the United States" on illegal vape products offered for sale by Orrville

Tobacco takes advantage of the inability of Ohio consumers to reasonably protect their interests as the consumers do not know that the products are not authorized or legal to be sold in the United States. We must presume that fact to be true.

{¶18} The State's complaint is not about the label. However, the label that states "sale only allowed in the United States" is one of the circumstances surrounding Orrville Tobacco's allegedly deceptive sales practices. In its memorandum in opposition to Orrville Tobacco's Civ.R. 12(B)(6) motion to dismiss, the State made clear it was not seeking to change the label on the tobacco products. Rather, the State argued Orrville Tobacco could comply with Ohio's consumer protection law by not selling illegal adulterated vapes, or by displaying the products in a separate section with signage indicating the vapes were unregulated by the FDA.

{¶19} In *Burgett v. SD Orrville, LLC,* 2025-Ohio-5837, ¶ 22 (9th Dist.), this Court recently stated:

> "It is how the consumer views the act or statement which determines whether it is unfair or deceptive." *Frey* v. *Vin Devers, Inc.* 80 Ohio App.3d 1, 6 (6th Dist. 1992). Consequently, "[i]f the supplier does or says something, regardless of intent, which has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts, then the act or statement is deceptive." *Id.*

A consumer could reasonably view Orrville Tobacco's actions as deceptive because the acts have the likelihood of inducing in the mind of a consumer a belief which is not in accord with the facts, and that belief is that the illegal unregulated adulterated products are legal, when they are not. The deceptive action alleged here is not the label "sale only allowed in the United States." This label appears to be pre-printed on the packaging of the illegal vapes according to the attachments to the State's complaint. When reviewing the complaint, we may also review the material incorporated into the complaint and it is considered as part of the complaint for purposes of considering a Civ.R. 12(B)(6) motion to dismiss. *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio

St.3d 106, 109 (1995). The actions of Orrville Tobacco alleged to be deceptive are that Orrville Tobacco is selling illegal unregulated adulterated vapes without informing consumers the unregulated vapes are in fact illegal and adulterated and not allowed to be sold in the United States or Ohio. Nothing in the federal law requires Orrville Tobacco to sell these illegal unregulated adulterated products. Further, nothing in the labeling requirement for tobacco products prevents Orrville Tobacco from disclosing to consumers that, irrespective of the label, the unauthorized vapes it sells are illegal and adulterated.

{¶20} In addition, it is unclear at this stage of the proceedings whether the Food and Drug Administration *actually requires* unauthorized and illegal vapes to be labeled "sale only allowed in the United States." *See State ex rel. Yost v. Central Tobacco and Stuff, Inc.,* 2025-Ohio-4613, ¶ 57 (5th Dist.) (King, J., dissenting), *appeal accepted,* 2026-Ohio-475. Orrville Tobacco argues it should be permitted to sell and promote the illegal unregulated vapes without disclosing they are illegal and unregulated so long as the illegal vapes carry the label "sale only allowed in the United States." Such an interpretation of federal law would mean Congress intended to allow a product that is *not allowed* to be sold in the United States to be promoted and sold by retailers as if it *is* allowed to be sold in the United States. It defies common sense that the FDCA can be used to shield sellers of illegal unregulated adulterated tobacco products from a state's consumer protection laws. This would be an absurd result, and the law need not and should not endorse an absurd result. *State ex rel. Walker v. Bolin*, 2024-Ohio-5126, ¶ 18 (Brunner, J., dissenting).

> The primary goal of statutory interpretation is to determine and give effect to the intent of the legislature. *Christe v. GMS Mgt. Co., Inc.*, 88 Ohio St.3d 376, 377 . . . (2000). We seek first to determine legislative intent from the plain language of a statute, *Summerville v. Forest Park*, . . . 2010-Ohio-6280, . . . ¶ 18, the general rule being that "[i]f the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary," *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545 . . . (1996). An exception to the plain-language rule exists, however, when the plain language of

the statute would lead to absurd results that the legislature obviously did not intend. *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, . . . 2017 Ohio-8714, . . . ¶ 22[.]

*Diller v. Diller*, 2023-Ohio-1508, ¶ 16 (Stewart, J., dissenting.) *See, also*, *Donovan v. FirstCredit, Inc.,* 983 F.3d 246, 254 (6th Cir. 2020).

{¶21} Federal tobacco laws are expressly for the "protection of the public health." *See* 21 U.S.C. 387j(c)(2)(A), (c)(4), (c)(5), (d)(1)(a). Interpreting federal and state law in a way that allows the selling, advertising, and promotion of an illegal adulterated product that is inhaled into a person's lungs so long as it is labeled "sale only allowed in the United States," without disclosing that the product is in fact illegal and adulterated does not protect the public health. Interpreting federal tobacco regulatory law and Ohio's CSPA in a way that allows illegal vapes to be sold without the seller disclosing that they are illegal misleads the public to believe the illegal vapes have undergone the same scrutiny and regulatory process as legal tobacco products. The danger lies in not knowing whether the illegal unregulated adulterated vapes would have passed regulatory muster. It is unknown whether the process may have weeded out some of the unregulated products altogether to protect the public health.

{¶22} Presuming all factual allegations of the State's complaint to be true and making all reasonable inferences in favor of the State, we cannot say the State's claims against Orrville Tobacco are barred by the "safe harbor" provision of the CSPA. The State's complaint therefore does state a claim or claims upon which relief can be granted.

{¶23} Accordingly, the State's second assignment of error is sustained.

**ASSIGNMENT OF ERROR III**

**THE TRIAL COURT ERRED IN GRANTING [ORRVILLE TOBACCO'S] MOTION TO DISMISS FINDING THAT THE STATE OF OHIO IS PREEMPTED FROM ENFORCING THE CSPA.**

**{¶24}** "Under the Supremacy Clause [of the United States Constitution], the United States Congress has the power to preempt state law." *State ex rel. Yost v. Volkswagen Aktiengesellschaft*, 2021-Ohio-2121, ¶ 11. Federal preemption can be express or implied. *Id*. Here, the trial court found the State's claims were impliedly preempted by federal law. When Congress expressly preempts state law, it explicitly says so with clear statutory language. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990). However, when considering whether preemption is implied, courts look to congressional intent to determine whether Congress meant to preempt state law without saying as much. *See id*. at 79. As stated above, Congress enacted federal tobacco laws for the "protection of the public health." *See* 21 U.S.C. 387j(c)(2)(A), (c)(4), (c)(5), (d)(1)(a).

**{¶25}** Orrville Tobacco argues federal law prohibits states from enacting requirements concerning the *labeling* of tobacco products and because the State's complaint alleges the vapes sold by Orrville Tobacco carry the label "sale only allowed in the United States," the State's claims are preempted.

**{¶26}** 21 U.S.C. 387p(a)(2)(A) provides:

> No state or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, *labeling*, registration, good manufacturing standards, or modified risk tobacco products.

(Emphasis added.) However, 21 U.S.C. 387p(a)(1) provides in part:

> Except as provided in paragraph (2)(A), nothing in this subchapter, or rules promulgated under this subchapter, shall be construed to limit . . . a State . . . to enact, adopt, promulgate, and enforce any law, rule, regulation, or *other measure* with respect to tobacco products that is in addition to, or more stringent than, requirements established under this subchapter, including a law, rule, regulation, or *other measure relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of,* or use of tobacco products by individuals of any age, information reporting to the State, or measures relating to fire safety standards for tobacco products.

(Emphasis added.)

{¶27} Therefore, federal law expressly *allows* states to enforce laws or measures with respect to tobacco products relating to the *sale, distribution, advertising, or promotion* of tobacco products. *See, also, Vapor Technology Assn. v. Wooten,* 2025 WL 1787420, *5 (E.D. North Carolina Jun. 27, 2025) ("the text [of 21 U.S.C. § 387p(a)(1)] reiterates that the Preemption Clause 'does not apply to requirements relating to the sale . . . the advertising and promotion of, or use of, tobacco products.'"); *National Association of Tobacco Outlets, Inc. v. City of Providence, R.I.,* 731 F.3d 71, 85 (1st Cir. 2013) (ordinance concerning coupon redemption for tobacco products not preempted); *R.J. Reynolds Tobacco Co. v. Cty. of Los Angeles,* 29 F.4th 542, 552 (9th Cir. 2022) (ban of flavored tobacco products not preempted); and *R.J. Reynolds Tobacco Co. v. City of Edina,* 60 F.4th 1170, 1173 (8th Cir. 2023) (ban of sale of flavored tobacco products not preempted.). "Tobacco product regulation has long been subject to state authority[.]" *Wisconsinites for Alternatives to Smoking & Tobacco, Inc. v. Casey,* 2025 WL 2582099, *6 (W.D. Wisconsin Sep. 5, 2025). When Congress enacted the Tobacco Control Act in 2009, it expressly reserved substantial regulatory authority to the States. *Id.* at *5.

{¶28} "The modern preemption doctrine recognizes broad authority of the federal and state governments to concurrently regulate the same subject." *Central Tobacco,* 2025-Ohio-4613 at ¶ 53 (King, J., dissenting), citing *National Solid Wastes Management Association v. Killian*, 918 F.2d 671, 686 (7th Cir. 1990) (Easterbrook, J., dubitante) "Thus, the mere existence of legislation at both levels is alone insufficient to preempt state law." *Central Tobacco* at ¶ 53 (King, J., dissenting). "Preemption analysis is guided by the presumption that a federal statute does not displace local law 'unless Congress has made such an intention clear and manifest.'" *U.S. Smokeless Tobacco Manufacturing Co. LLC v. City of New York,* 708 F.3d 428, 432 (2d Cir. 2013),

quoting *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005). This assumption is particularly strong where a state or locality seeks to exercise its police powers to protect the health and safety of its citizens. *Id.* Here the State's claims are "implicitly centered on health and safety concerns of an *unregulated product being offered for sale in a deceptive manner to unaware consumers*." (Emphasis added.) *See Central Tobacco* at ¶ 58 (King, J., dissenting). Therefore, the State's claims fall squarely within Ohio's police powers and do not conflict with, and are in fact consistent with, Congress's intent to protect the public health and Congress's express reservation of authority to the states to enact and enforce laws "relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products." 21 U.S.C. 387p(a)(1).

{¶29} The State is not seeking to have Orrville Tobacco remove or alter the label or add a label to the vape packaging. Instead, the State seeks an order requiring Orrville Tobacco to disclose that the illegal unregulated adulterated vapes are illegal and unauthorized because the label on the packaging, without further information, would lead unaware consumers to believe the product was legal. Nothing in the FDCA prohibits the State from requiring Orrville Tobacco to clearly and conspicuously disclose in its *sale and promotion* of unauthorized vape products that the unauthorized vapes are unregulated, illegal, and adulterated.

{¶30} If in fact federal law does require illegal vapes to carry the label "sale only allowed in the United States," it is possible for Orrville Tobacco to comply with the federal labeling requirement and comply with the CSPA. "[I]f there is any ambiguity as to whether the local and federal laws can coexist, we must uphold [state or local law]." *See U.S. Smokeless Tobacco*, 708 F.3d 428 at 433. Orrville Tobacco could comply with Ohio's consumer protection law by not

selling illegal unregulated adulterated vapes, or by displaying the products in a separate section with signage indicating the vapes are unregulated by the FDA.

{¶31} Again, this is the Civ.R. 12(B)(6) stage of the proceedings and we are mindful that it must appear beyond doubt that the State can prove no set of facts entitling it to relief before the State's complaint can be dismissed. Here, the State has alleged facts that, if proven, would entitle the State to the relief it seeks and the State's claims are not clearly preempted by federal law.

{¶32} Accordingly, the State's third assignment of error is sustained.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED RELYING ON EXTRINSIC EVIDENCE OUTSIDE THE COMPLAINT WHEN RULING ON A C[IV].R. 12(B)(6) MOTION TO DISMISS[.]**

{¶33} Our resolution of the State's second and third assignments of error renders this assignment of error moot pursuant to App.R. 12(A)(1)(c).

{¶34} Accordingly, the State's first assignment of error is moot.

### III.

{¶35} Based on the foregoing, the State's first assignment of error is moot and its second and third assignments of error are sustained. The judgment of the Wayne County Court of Common Pleas is reversed and remanded for further proceedings consistent with this decision.

Judgment reversed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CONCURS.

STEVENSON, J.
DISSENTING.

{¶36} I would respectfully dissent from the majority's decision regarding Assignment of Error III in this case. This case involves difficult questions regarding the State's ability to use the CSPA to challenge the sale of vape products required to be labeled under federal law. The trial court found that federal law preempted the State's attempt to utilize the CSPA in this instance. The majority reverses that decision. I would affirm, and for brevity's sake, just note that I agree with the majority opinions in *State ex rel. Yost v. Cent. Tobacco and Stuff Inc.*, 2025-Ohio-4613 (5th Dist.) and *State ex rel. Yost v. Elevate Smoke, LLC*, 2025-Ohio-5652, ¶ 72. (1st Dist.), two recent

cases that considered this exact issue of preemption. I note that the Ohio Supreme Court has accepted jurisdiction in *State ex. rel. Yost v. Cent. Tobacco and Stuff Inc.,* 2026-Ohio-475, and welcome the Court's consideration of these conflicting decisions.

{¶37} The trial court also dismissed the State's complaint based on the CSPA's safe harbor provision. Neither the First nor Fifth District cases discussed the application of the CSPA's safe harbor provision to the State's complaint in those cases. R.C. 1345.12(A) of the CSPA states that "Sections 1345.01 to 1345.13 of the Revised Code do not apply to . . . [a]n act or practice required or specifically permitted by or under federal law . . . ." This provision, and similar provisions in other state consumer protection statutes, has been referred to as a "safe harbor" provision. *See In re Santa Fe Natural Tobacco Co. Marketing Sales Practices Liab. Litigation*, 288 F.Supp.3d 1087, 1250-1251 (D. New Mexico 2017).

{¶38} The State alleges in its complaint that Orrville Tobacco violated the CSPA, specifically R.C. 1345.02(A)/(B) and R.C. 1345.03(A)/(B). It contends that Orrville Tobacco engaged in deceptive, misleading, and unconscionable acts when it sold illegal vapes with the label "sale only allowed in the United States[.]" The FDCA as amended by the Tobacco Control Act ("TCA"), however, requires that "the label, packaging, and shipping containers of cigarettes . . . bear the statement 'Sale only allowed in the United States[.]'" 21 U.S.C. 387t(a)(1). The FDCA prohibits a state from establishing a labeling requirement that is in addition to or different from its regulations. It expressly provides that:

> No state or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products.

21 U.S.C. 387p(a)(2)(A).

{¶39}　The State contends that Orrville Tobacco has committed unfair or deceptive acts or practices in violation of Ohio's CSPA by offering for sale and selling illegal vapes with this label. The State maintains that Orrville Tobacco (1) represents that the illegal vapes "have sponsorship or approval" when it offers for sale and sells illegal vapes with this label; (2) "knowingly tak[es] advantage of . . . consumers" by placing this label on illegal vapes; and (3) fails to disclose the illegality of certain vapes with the placement of this required label. It further alleges that Orrville Tobacco leads consumers to believe that it possesses or has a reasonable basis to believe that its representations are true when it places the label on the illegal vapes that it offers for sale and sells. The State's claims are all based on the FDCA required "[s]ale only allowed in the United States" label, as amended by the TCA. 21 U.S.C. 387t(a)(1). By the plain terms of the FDCA, Orrville Tobacco cannot sell these products without including that label. *Cent. Tobacco and Stuff Inc.*, 2025-Ohio-4613, at ¶ 45 (5th Dist.) ("The FDCA requires all tobacco products affix this label, not just those that have been authorized."). Thus, under R.C. 1345.12(A) of the CSPA, this label is a requirement of the FDCA and the CSPA's safe harbor provision applies. Further, the State cannot require the products to be sold without this label or some other warning, as the State would be establishing a label requirement that is different from the regulation in the FDCA.

{¶40}　Because the State's claims are based on a label that federal law mandates Orrville Tobacco to place on the vapes it sells, I would conclude that the trial court did not err when it determined that the safe harbor provision of the CSPA as found in R.C. 1345.12(A) applies. Accordingly, I also respectfully dissent from the majority's decision as to Assignment of Error II.

APPEARANCES:

DREW SMITH, Senior Assistant Attorney General, for Appellant.

ERIC N. HEYER and JAMES C. FRASER, Attorneys at Law, for Appellee.

GREGORY P. FELDKAMP, Attorney at Law, for Appellee.